IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| OSCAR LEE SYKES, ) | Civil Action No.: 4:04-cv-02329-RBH-TER |
| ) | |
| Plaintiff ) | |
| ) | |
| vs ) | |
| ) | REPORT AND RECOMMENDATION |
| HORRY COUNTY DETENTION ) | |
| CENTER (J. REUBEN LONG), ) | |
| DIRECTOR: MR. TOM FOX, ) | |
| CPT. SUSAN SAFFORD, ) | |
| AND LT. A. CUNNINGHAM, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Oscar Lee Sykes ("plaintiff/Sykes"), filed this action on July 26, 2004, alleging constitutional violations pursuant to 42 U.S.C. § 1983[1]. At all times relevant to the allegations in the plaintiff's complaint, he was a pre-trial detainee housed at the Horry County Detention Center/J. Reuben Long Detention Center ("JRLDC"). Plaintiff is currently confined at the Lieber Correctional Institution. The defendants filed an answer on December 21, 2004. On July 8, 2005, defendants filed a motion for summary judgment pursuant to Rule

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

1

56 of the Federal Rules of Civil Procedure along with a memorandum and affidavits in support of that motion (document #24 & #25). Because the plaintiff is proceeding pro se, he was advised on or about July 11, 2005, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response to the motion for summary judgment on July 28, 2005.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

Plaintiff alleges violations of his constitutional rights due to improper conditions of confinement. Plaintiff raises numerous allegations in his complaint such as, but not limited to, that he was served cold food, had to sleep on the damp floor, was denied a regular haircut, was not provided with clean clothes regularly, no recreation or fresh air, inability to shower often, dampness, maximum security status, etc. Plaintiff seeks $5,000,000.00 actual damages.

Defendants filed a motion for summary judgment arguing that the named defendants are immune from suit in their official capacity and the action is barred by the 11th Amendment. Further, defendants assert that plaintiff's conditions of confinement fail as a matter of law and allegations concerning his maximum security status claim fails to state a claim upon which relief can be granted.

2

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become

3

immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.

Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

### D.  CONDITIONS OF CONFINEMENT

As stated above, plaintiff alleges numerous allegations with regard to his condition of confinement at the JRLDC. Plaintiff alleges that he was improperly placed and/or kept in maximum security. Plaintiff alleges that the conditions of his confinement were inhuman such as "no sunlight over the period of four months, . . . no clean clothes regularly every 10-14 days often no showers, no recreations, or fresh air, no hair cut over 7 month period, not allowed to groom finger and toe nails over this period of time, not allowed to shave, cold food, having to sleep on the floor in puddles of water from leaking pipe work, . . ." (Complaint).

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S.at 535 n.16.   To prevail on a conditions of confinement claim, a  pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v.

Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process-- even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986).

The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

To survive summary judgment, the plaintiff must show more than de minimis pain or injury. The plaintiff has failed to produce evidence of serious or significant physical or

6

emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim.  Strickler, 989 F.2d at 1380-1381.

Plaintiff has failed to show that he suffered serious or significant physical or emotional injury resulting from the alleged conditions of confinement.  In his response to the motion for summary judgment, plaintiff alleges that he slipped on water while in shackles and fell hitting his head. Plaintiff provided a copy of the nurse's notes from the JRLDC and a copy of the emergency room report from Conway Hospital. Plaintiff was taken to the emergency room where it was noted that his CT scan was normal and plaintiff had no abrasions or hematomas and his extremities had no tenderness or swelling. He was released with Motrin for pain as needed.  The medical notes from JRLDC reveals that when plaintiff returned from the hospital, he was observed walking without difficulty and did not have any further complaints. Plaintiff alleged in one sentence in his response that he had to have mental treatment due to the conditions at JRLDC but did not elaborate or provide any records from any mental health facility to support his allegations.

Thus, assuming *arguendo,* that the court were to find constitutional violations based on conditions of confinement, plaintiff has failed to show a significant injury as a result of the alleged violations. Accordingly, the undersigned recommends that summary judgment for the defendants be granted on these claims.

## RECREATION

As to recreation, plaintiff has asserted in his response to summary judgment that he was denied inside or outside recreation for 18 months.

Decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, 461 U.S. 238 91983); Lyons v. Clark, 694 F. Supp. 184, 187 (E.D. Va. 1988), aff'd, 887 F. 2d 1080 (4th Cir. 1989). Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, 468 U.S. 576 (1984); Rhodes v. Chapman, 452 U.S. 337, 346-47 (1981). While the Supreme Court has noted that, "prisons are not beyond the reach of the Constitution," they have also found that prisoners need be accorded only those rights which are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Hudson v. Palmer, 468 U.S. 517, 523 (1984).

Plaintiff has not alleged any significant physical or emotional injury resulting from being denied recreation. Even if the allegations were proven that he was denied recreation and there was a constitutional violation as to exercise, plaintiff has not alleged how these defendants personally deprived him of recreation. Plaintiff attached a copy of a medical request form dated April 11, 2005, in which he requested to see a doctor about "lower back ache problem, which result from no exercise opportunity over 18 months detainment in maximum security unit B-1." However, plaintiff has not alleged any significant or serious

injury to his back or alleged that he requested any further treatment due to his alleged backache other than this one request form dated almost nine months after the filing of his complaint. Therefore, plaintiff has not presented any evidence of any significant emotional or physical injury as a result of being denied recreation. Hence, any injury at best would be de minimis. Thus, it is recommended that this issue be dismissed as to these defendants.

### **JRLDC**

In as much as the complaint requests an award of damages against the JRLDC, the Detention Center is not a "person" for purposes of suit under 42 U.S.C. § 1983.[2] In order to state a claim for damages under § 1983, an aggrieved party must sufficiently allege that he or she was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." See 42 U.S.C. § 1983; Monroe v. Page, 365 U.S. 167 (1961); see generally 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1230 (2002). The JRLDC is a group of buildings or a facility. Inanimate objects such as buildings, facilities, and grounds cannot act under color of state law. Hence, the JRLDC is not a "person" subject to suit under 42 U.S.C. § 1983. See Allison v. California Adult Auth., 419 F.2d 822, 823 (9th Cir. 1969)(California Adult Authority and San Quentin Prison not "person[s]" subject

---

[2] In his response to the motion for summary judgment, plaintiff states that he merely named the JRLDC to "give reference to the fact that the defendants are not state employees" Doc. # 38.

to suit under 42 U.S.C. § 1983); Preval v. Reno, 57 F.Supp.2d 307, 310 (E.D. Va. 1999)("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); Brooks v. Pembroke City Jail, 722 F. Supp. 1294, 1301(E.D. N.C. 1989)("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). Monetary relief requested against the JRLDC cannot be granted. Thus, it is recommended that summary judgment be granted with respect to defendant JRLDC.

### E. CUSTODY CLASSIFICATION

Plaintiff asserts that he was unjustly held in the maximum security unit. Defendants assert that plaintiff was a disciplinary problem and under the inmate handbook, an inmate may be permanently assigned to maximum security. Thus, defendants assert that plaintiff is a security risk and a threat to the staff at JRLDC.

In Bell v. Wolfish, 441 U.S. 520, 547 (1979), the Court discussed the state's strong interest in "maintaining institutional security and preserving internal order and discipline" within their prison systems: [3]

> But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain than the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial. (cites omitted). Bell, supra, at 547-48.

---

[3] The opinion in Bell v. Wolfish, supra, dealt primarily with the constitutional rights of pretrial detainees, rather than the rights of prison inmates.

Decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. As previously discussed, the Supreme Court noted that the administration of state prisons is a complex task, with numerous administrative goals, including the maintenance of order and discipline within the prison, the prevention of escapes and, to the extent possible, the rehabilitation of the inmates. These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some prison practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials. While the Supreme Court has noted that, "prisons are not beyond the reach of the Constitution," they have also found that prisoners need be accorded only those rights which are "not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." Hudson v. Palmer, 468 U.S. 517, 523 (1984).

> When a prison regulation or practice offends a fundamental constitutional guarantee, federal courts will discharge their duty to protect constitutional rights. Johnson v. Avery, 393 U.S. 483, 486 (1969). Procunier, supra at 405-06.

In short, the federal courts will act to protect the violation of fundamental constitutional rights, but generally do not intervene in the ordinary administration of state

prisons.

Prison officials have the authority to adopt regulations and procedures reasonably related to legitimate penological interests. In all cases in which prisoners assert that prison regulations violate the Constitution, the principle that inmates retain at least some constitutional rights must be balanced against the recognition that prison authorities are best equipped to make difficult decisions regarding prison administration. Washington v. Harper, 494 U.S. 210 (1990). Constitutional rights must be scrupulously observed by prison officials. However, inquiry of federal courts into prison management is limited under §1983 to whether the particular system violates any constitutional provision. Outside this inquiry, judgment calls are for prison officials outside the judicial branch. Bell v. Wolfish, 441 U.S. 520, 547 (1979); See Block v. Rutherford, 468 U.S. 576 (1984). Courts have deferred to prison officials in regards to, among other matters, administrative detention, cell and inmate searches, mail regulation, transfer, custody classifications, work assignments, inmate property rights, and visitation.

As to the claims concerning custody classification and/or cell assignments, an inmate has no constitutional right to be confined in a particular location or custody level. Meachum v. Fano, 427 U.S. 215 (1976). The plaintiff in Meachum was complaining because he had been transferred to a higher-security prison, a less desirable environment which altered both his place of confinement and changed the level of freedom he enjoyed within the prison.

The plaintiff does not have a constitutional right to be confined in a particular

location. Meachum, supra. In addition, South Carolina prison regulations regarding classification create no liberty interests protected by the Fourteenth Amendment. See Slezak v. Evatt, 21 F.3d 590, 597 (4th Cir. 1994).

Further, defendants submitted the affidavit of Joey Johnson ("Johnson") who attests that he is employed at the J. Reuben Long Detention Center as the Deputy Director. Johnson attests that a review of the incident reports at the JRLDC clearly establishes that a systematic disciplinary problems all created by the plaintiff including the following:

> . . . finding a 6-inch shank on June 18, 2004, threatening officers on March 3, 2004, attempted assault on November 13, 2003, assault on another inmate on December 11, 2003, threatening officers on December 29, 2003, threatening officers with a weapon on January 30, 2004, threatening officers on February 2, 2004, threatening officers with a weapon on March 26, 2004, inciting a riot on June 1, 2004, assaulting an inmate on December 11, 2003, attempting an assault on a corrections officer, creating a disturbance and disorderly conduct on November 13, 2003, and disorderly conduct and trying to incite a riot on September 9, 2003.

Affidavit attached to doc. # 35.

Johnson asserts that plaintiff is/was considered a security risk and threat to the staff due to his continued actions. Johnson set out a portion of the inmate handbook revealing the reasons an inmate may be permanently assigned to maximum security which plaintiff has met:

A. Under the inmate handbook, an inmate may be permanently assigned to maximum security for one of the following reasons:

(a)      having escaped, attempted escape or pose a series of escape risks:

(b)      having initiated assaults on three separate occasions:

(c)      having assaulted or otherwise endangered the safety or well-being of detention staff and/or other persons:

(d)      having endangered the safety or well-being of other inmates:

(e)      having demonstrated unmanageable behavior in general population:

(f)      having been identified as extremist in our society, i.e., terrorist, political assassin, etc.:

(g)      any inmate who receives a sentence of 20 years or more shall remain in maximum security until he is sent to prison; and

(h)      any other violation endangering security or safety within the facility.

Johnson attests that plaintiff's various and constant disciplinary infractions plainly call for maximum security assignment. (Johnson affidavit).

Based on a review of the affidavit and the fact that defendants assert plaintiff was a security risk, it appears that plaintiff, through his own actions, caused his custody classification to be in the maximum security. Plaintiff has failed to show that the conditions amount to punishment due to his disciplinary problems while at the JRLDC. Defendants have stated a legitimate non-punitive purpose, safety and security, to justify having plaintiff held in the maximum security unit. As previously noted, plaintiff is no longer housed at the JRLDC.

Based on the above discussion, the undersigned recommends that plaintiff's claim fail on this issue and summary judgment be granted in favor of the defendants.

## F. ELEVENTH AMENDMENT IMMUNITY

The defendants argue that the plaintiff's §1983 claims against them in their official capacities are barred pursuant to Eleventh Amendment Immunity. In his response in opposition to the motion for summary judgment, plaintiff asserts that defendants are not entitled to Eleventh Amendment immunity in that they "are not government state employees . . . they work for the County of Horry." (Doc. #38).

When a defendant is sued in his or her official capacity, the suit is frequently intended as one against the state, the real party in interest. If review of the pleadings indicates that the state is, in fact, the party being sued, then a judgment awarding damages is precluded by the Eleventh Amendment of the United States Constitution. Although declaratory and/or injunctive relief may be granted, damages may not be awarded against the state.

In the case of <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58 (1989), the Supreme Court analyzed the interplay between Section 1983 and the Eleventh Amendment of the Constitution and stated,

> Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity [cites omitted] or unless Congress has exercised its undoubted power

15

>under § 5 of the Fourteenth Amendment to override that immunity.

The Eleventh Amendment immunity granted to the states "applies only to States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes," but the court found that state agencies, divisions, departments and officials are entitled to the Eleventh Amendment immunity. Will, 491 U.S. at 70. In reaching this conclusion, the court held that a suit against state officials acting in their official capacities is actually against the office itself and, therefore, against the state. State officials may only be sued in their individual capacities.

Defendants are state officials acting in their official capacities while employed at JRLDC. As this is a lawsuit against state officials, it is recommended that they are entitled to Eleventh Amendment immunity. Based on a review of the complaint, it appears that plaintiff is suing defendants in their official capacities. Therefore, it is recommended that summary judgment be granted for defendants with regard to this issue. [4]

---

[4] It appears that plaintiff was naming only Horry County Detention Center in the caption of his complaint. However, if plaintiff was attempting to name the municipality of Horry County, it is recommended that summary judgment be granted for defendants.     In order to maintain a 42 U.S.C. § 1983 municipal liability claim, a plaintiff must affirmatively establish that the alleged constitutional violation was directly caused by an official practice, policy, or custom of the municipality. Monell, supra. Based upon a review of the evidence of record, the undersigned concludes the evidence of record fails to create a genuine issue of material fact as to whether the plaintiff's alleged constitutional violations were "directly caused by an official practice, policy or custom of the municipality." The plaintiff never alleged any direct allegations against the defendant municipality in his complaint. Hence, the plaintiff failed to state a cause of action against defendant Horry County.

### III. PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed a motion for injunctive relief seeking "legal materials or ink pen's, legal pad-writing paper, typing paper, legal mailing envelope's, regular mailing envelopes for legal purpose, stapler and staple." (Doc. # 43).

Defendants filed a response in opposition to the motion arguing that plaintiff is not entitled to unlimited amount of supplies but only reasonable access to courts. Defendants assert that plaintiff has conducted written discovery and has failed to allege or show any actual harm.

This District Court should consider and balance four factors in determining whether to grant injunctive relief prior to a trial on the merits:

> (a) plaintiffs' likelihood of success in the underlying dispute between the parties; (b) whether plaintiffs will suffer irreparable injury if the interim relief is denied; (c) the injury to defendants if an injunction is issued; and (d) the public interest.

North Carolina State Ports Authority v. Dart Containerline Co., Ltd., 592 F.2d 749 (4th Cir. 1979). See also Blackwelder Furniture Co. v. Seilig Manufacturing Co., 550 F.2d 189 (4th Cir. 1977); Fort Sumter Tours, Inc. v. Andrus, 564 F.2d 1119 (4th Cir. 1977).

The two most important factors are probable irreparable injury to the plaintiffs if the relief is not granted and the likelihood of harm to the defendant if the injunction is granted. North Carolina State Ports Authority v. Dart Containerline Co., Ltd., at 750.

Plaintiffs do not have an automatic right to a preliminary injunction, and such relief should be used sparingly. The primary purpose of injunctive relief is to preserve the status

17

quo pending a resolution on the merits. Injunctive relief which changes the status quo pending trial is limited to cases where "the exigencies of the situation demand such relief." Wetzel v. Edwards, 635 F.2d 283, 286 (4th Cir. 1980).

Additionally, as noted, the courts are directed to leave prison administration to the discretion of those best suited to running the prisons. Granting plaintiff injunctive relief would have the effect of allowing a prisoner to "approve" actions taken by the prison administration that might have an impact on them. Importantly, the plaintiff has not shown that he is currently subject to a real and immediate threat of harm. See Los Angeles v. Lyons, 461 U.S. 95 (1983). It is noted that there have been more than sixty-five documents filed in this case with numerous documents filed by plaintiff. Thus, it does not appear that plaintiff has had any problems in litigating this case. Therefore, the undersigned recommends that any claims for injunctive relief be denied.

## IV. CONCLUSION

The plaintiff has failed to show that the defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore,

RECOMMENDED that the motion filed by the defendants for summary judgment (document # 35) be GRANTED IN ITS ENTIRETY.

FURTHER, IT IS RECOMMENDED that plaintiff's motion for preliminary

injunction (doc. #43) be DENIED.

          Respectfully submitted,

          s/Thomas E. Rogers, III
          Thomas E. Rogers, III
          United States Magistrate Judge

February 24, 2006
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

**Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"**
**&**
**The Serious Consequences of a Failure to Do So**

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503
