IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| OSCAR LEE SYKES, | ) | Civil Action No.: 4:04-cv-02329-RBH-TER |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs | ) | SUPPLEMENTAL |
| | ) | REPORT AND RECOMMENDATION |
| HORRY COUNTY DETENTION | ) | |
| CENTER (J. REUBEN LONG), | ) | |
| DIRECTOR: MR. TOM FOX, | ) | |
| CPT. SUSAN SAFFORD, | ) | |
| AND LT. A. CUNNINGHAM, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## I.  PROCEDURAL BACKGROUND

The plaintiff, Oscar Lee Sykes ("plaintiff/Sykes"),  filed this action on July 26, 2004, alleging

constitutional violations pursuant to 42 U.S.C. § 1983[1].  At all times relevant to the allegations in

the plaintiff's complaint, he was a pre-trial detainee housed at the Horry County Detention Center/J.

Reuben Long Detention Center ("JRLDC"). Plaintiff is currently confined at the Lieber Correctional

Institution.

The undersigned issued a report and recommendation on February 24, 2006. The Honorable

R. Bryan Harwell issued an Order on March 31, 2006, remanding this matter to the undersigned for

further consideration of the issue of conditions of confinement and injury and the separate issue of

_____

[1]All pretrial proceedings in this case were referred to the undersigned pursuant to the
provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because
this is a dispositive motion, the report and recommendation is entered for review by the District
Judge.

qualified immunity. (Document #69).  Therefore, on June 23, 2006, the undersigned issued an Order in which  the parties were given twenty (20) days from the date of that Order to submit any additional memorandum and information, including but not limited to, affidavits, medical records, exhibits, and argument with regard to plaintiff's claim of conditions of confinement and qualified immunity. Defendants requested a couple of extensions of time to obtain some requested documents. These motions were granted and defendants filed their supplemental memorandum on August 2, 2006, along with exhibits. (Doc. #94). Plaintiff filed a response in opposition on August 3, 2006, and objections to the supplement on August 15, 2006. (Doc. #101).

Therefore, pursuant to Judge Harwell's Order of March 31, 2006, the undersigned will address the issue of conditions of confinement and injury and the separate issue of qualified immunity.

## II.  DISCUSSION

### A.  ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The undersigned will briefly restate the allegations by plaintiff in relation to these issues.

Plaintiff alleges violations of his constitutional rights due to improper conditions of confinement. Plaintiff raises numerous allegations in his complaint such as, but not limited to,  that he was served cold food, had to sleep on the damp floor, was denied a regular haircut, was not provided with clean clothes regularly, no recreation or fresh air, inability to shower often, dampness, maximum security status, etc. Plaintiff seeks monetary damages.

### B.  STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to

2

fully develop potentially meritorious cases.  See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972).  In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried.  The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim,  Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.  If none can be shown, the motion should be granted.  Fed. R. Civ. P. 56(c).  The movant has the burden of proving that a judgment on the pleadings is appropriate.  Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

3

## C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment.  Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987).  The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished.  An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual."  Bell v. Wolfish, 441 U.S. 520 (1979).  Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime.  Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials.  If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld.  Bell, 441 U.S. at 538.


## D.  CONDITIONS OF CONFINEMENT

As stated above, plaintiff alleges numerous allegations with regard to his condition of confinement at the JRLDC. Plaintiff alleges that he was improperly placed and/or kept in maximum

4

security. Plaintiff alleges that the conditions of his confinement were inhuman such as "no sunlight over the period of four months, . . . no clean clothes regularly every 10-14 days often no showers, no recreations, or fresh air, no hair cut over 7 month period, not allowed to groom finger and toe nails over this period of time, not allowed to shave, cold food, having to sleep on the floor in puddles of water from leaking pipe work, . . ." (Complaint).

As stated in Judge Harwell's Order, plaintiff filed objections to the report and recommendation in which he argued that he had set forth sufficient evidence from the medical records of the Conway Hospital to show injury on two separate occasions. Specifically, plaintiff refers to a back injury where his back was bruised and swelling with tenderness and insect bites which required hospitalization.[2]  It was also noted that plaintiff "referred to medical records from the states [sic] mental hospital (Just Care) of Medis [sic],of Zyprexa, and Prolyxcin. . ." Plaintiff argued that these records show the serious physical and emotional damage he has suffered. Plaintiff alleged that he sustained "serious physical and mental emotional damage from the long suffered endurance of the inhuman treatment by the defendants with the intent to punish and harm the plaintiff."

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16.   To prevail on a conditions of confinement claim, a  pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive

---

[2] The only mention of insect bites in the medical records submitted to this court is in plaintiff's exhibit, docket number #48-3, which are the nurses/physicians' notes from the JRLDC. A review of this report reveals that on 11/11/03 it was noted that plaintiff "had infected insect bites *last incarceration*." (Emphasis added).

governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381. To survive summary judgment, the plaintiff must show more than de minimis pain or injury.

Judge Harwell found that plaintiff had referenced numerous affidavits in which he alleges that "he has received mental health treatment and hospitalization as a result of the totality of the conditions. The court has not been provided with those records, however, the plaintiff's affidavits

indicate such treatment. As such, this court finds that while the individual incidents the plaintiff refers to may not establish more than <u>de minimis</u> injury standing by themselves, the court is concerned with the plaintiff's allegations of mental injury or otherwise allegedly resulting from the totality of the alleged conditions the plaintiff claims he was subjected to at the facility in question." (Order, doc. #69).

In defendants' supplemental memorandum, defendants assert that plaintiff's mental health records indicate no connection between plaintiff's mental health problems and the conditions of his confinement. Defendants assert that the booking report for the J. Reubin Long Detention Center dated August 13, 2003, indicates plaintiff suffers from no known mental problems. (Defendants' Exhibit A). However, a review of the three pages contained in Exhibit A by the undersigned reveals that there is no mention on the booking report of health conditions, mental conditions, or medication. (Exhibit A).

Next, defendants assert that plaintiff's medical records indicate that on June 17, 2004, plaintiff was admitted to Columbia Care Center, Just Care, pursuant to a Court Order from Horry County General Sessions. (Defendants' Exhibit B). Defendants argue that no where in the medical records do the physicians note a connection between the conditions of his confinement and an alleged mental injury or injury of any nature.

A review of the William S. Hall Psychiatric Institute's final summary by Dr. Wajahat A. Mirza reveals the following, quoted verbatim in part:

> Date of Admission:     06/04/04
> Date of discharge:      9/23/04
>
> HISTORY OF PRESENT ILLNESS: According to the papers that came with the patient, Mr. Sykes came to this facility pursuant to a court order from the Horry

7

County General Sessions Court. The court order requested an evaluation of his competency to stand trial, his criminal responsibility pursuant to the McNaughten Test for his actions on or about November 5, 2003.

MENTAL STATUS EXAMINATION: According to the admission notes, patient was neatly dressed, initially cooperative though later became aggressive verbally. He sat calmly in the chair then later became loud. Speech initially was appropriate, but later became rapid and pressured. Patient was blaming the officers at the detention center for not "upholding the law and covering it up" and believing that "others are following him." He denied any auditory or visual hallucinations. He described his mood to be "stressed." Affect was labile. He was alert and oriented to time, place and person. Memory appeared intact. Fund of knowledge was appropriate though judgment and insight were limited.

PHYSICAL AND NEUROLOGICAL EXAMINATION: Essentially unremarkable.

INITIAL DIAGNOSES:    AXIS I:     Psychosis, Not Otherwise Specified. Schizoaffective Disorder Versus Paranoid Schizophrenia Versus Bipolar Disorder.
                      AXIS II:    None.
                      AXIS III:   None.
                      AXIS IV:    Legal charges.
                      AXIS V:     Admission GAF: 40.

HOSPITAL COURSE: Patient was started on Zyprexa Zydis 20 mg at night. Subsequently, the Zyprexa Zydis dose was reduced to 10 mg at h.s. after patient complained of side effects. Patient was interviewed by the undersigned on 07/19/04. The staff had found some contraband items (small scissors and a sewing pin in his possession). Patient stated that he brought it from the detention center and hid them in his socks. Patient was counseled about it and given three day restriction. On history taking, he stated he had been harassed by the local police officers and his common-law wife who he though[t] was collaborating with them. He also stated that since they are a biracial couple, they were being harassed and being "shot at" repeatedly in Illinois though he never reported it to the police. Per report, patient was making other bizarre statements on admission and was also concerned about being attacked. Per staff report, patient has been calmer since admission though denies any changes in his thought process since admission. As result of this assessment, it appeared that patient was paranoid. Considering that the Zyprexa had not shown much advocacy, it was decided to start him on Prolixin 5 mg at bedtime and Seroquel which was gradually titrated up to 300 mg b.i.d. Subsequently, because of the patient's report, that Seroquel was making him too drowsy during the daytime, it was decided to switch the 600 mg dose at bedtime and he received a Prolixin Decanoate injection of 25 mg on 07/26/04. On 07/23/04, patient was continuing to have same

8

thoughts and appeared hostile and defiant, demanding to be taken off of Prolixin stating that he does not need any medicine. As a result, A Med Against Will was obtained to continue patient on his medication. Subsequently, patient was calmer, more sociable and conversant, reported that he was not sleeping during the day anymore, was tolerating his medicine and did express his wish to be put on SSI because he may have to be taking his medication. At this point, considering the fact that patient appeared more amenable to continue taking his medication, Prolixin Decanoate was discontinued. Patient continued to state in the subsequent interviews that the cops at Myrtle Beach had been harassing him and he was sent to jail for possession of a gun which belonged to his wife and considering that his wife was pregnant, he had to plea bargain with them to get five years probations [sic] so that he could get out of jail. He also reported that he had been to prison for twelve years in Illinois for armed robbery and had other arrests. He reported that after he came out of prison, he had the feeling that people were following him. He denied any prior psychiatric treatment. Apparently, he was threatening the security officers in the detention center and was disruptive at times and also attacked a fellow inmate there. I had a discussion with the forensic psychiatrist doing the evaluation who mentioned that the evaluation was not completed as the patient was requesting for his attorney to be present. He also reported that so far the impression has been that patient does not have schizophrenia. In order to help with the evaluation, at this point, his medications were all slowly tapered off. Subsequently, patient reported that he was feeling better since his medication was discontinued. He also continued to insist that he never made his wife hostage or had six with her against her will. He reported that he still believes that the officers in the detention center might be colluding to persecute him and his wife might have had an affair with one of them while he was still in Chicago. At this point, despite discussing sensitive topics, he was able to keep his cool. It is apparent at this point that without more information available from collateral sources, particularly some accurate history from his past, it is difficult to comment on a clear cut diagnosis. After that, patient remained calm for the most part though on 09/23/04, there was an episode where he attacked one of his fellow roommates and claimed that his roommates were not clean and keeping the place tidy. At this point, decision was made to transfer him back to the detention center and suggest to the forensic psychiatrist to finish his evaluation on an outpatient basis.

CONDITION AT DISCHARGE: Patient is generally calm and cooperative. No auditory or visual hallucinations. No suicidal or homicidal ideation.

DISCHARGE MEDICATIONS: None

FINAL DIAGNOSES:        AXIS I:        Rule out Schizophrenia
                        AXIS II:       Antisocial Personality Disorder.
                                       Rule Out Paranoid Personality Disorder

AXIS III:     Cold Symptoms.
AXIS IV:     Legal charges.
AXIS V:      Admission GAF: 40.
             Discharge GAF: 70

(Exhibit B).

In the notes from the Waccamaw Center for Mental Health, it is noted that plaintiff reported that he had been in "Max" during most of his incarceration. The report stated plaintiff was extremely preoccupied with his legal issues and that "his extensive time in Max may contribute to his intensity and seeming obsession with his legal issues. His thought process is well organized but appears to have a paranoid trait." (Exhibit C, p. 2). It was also noted that there was no evidence of depression "nor of an unusual level of personal distress." (Exhibit C, p. 1). It was also noted that plaintiff insisted he did not need mental health services and wanted no further involvement at this time. The notes indicate plaintiff was informed that their services were available and to let the medical staff know if he would like mental health services. (Exhibit C, p. 2).

It appears from the reports submitted to the court related to plaintiff's mental health treatment that the only conditions of confinement plaintiff discussed or complained about was that he was in "Max" segregation.

Next, defendants assert that subsequent to Judge Harwell's Order, defendants' attorney inquired of plaintiff's mental health care provider whether or not such a causal connection existed. Defendants contend that "Dr. Ellison's response (attached hereto and labeled Exhibit D) indicates no such causal connection exists." (Defendants' supplemental memorandum, Doc. #94 p. 2).

A review of the response from Dr. Ellison, Medical Director at Waccamaw Center for Mental Health, reveals that he could not determine that the totality of the conditions of confinement was the

cause of plaintiff's treatment and hospitalization. Thus, a reading of this report reveals that Dr. Ellison's report does not provide a causal connection between plaintiff's conditions of confinement and his treatment at the mental health center.[3]

Plaintiff filed a response in opposition to the supplemental memorandum, arguing that the supplemental memorandum is null and void because Judge Harwell erred in denying plaintiff's motion to strike and motion to disqualify E. Lloyd Wilcox as counsel for defendants. Plaintiff argues that because counsel of record for defendants, Marian H. Lee, failed to obtain a court order relieving her as counsel of record, "defendants and it's unauthorized Rambo attorney counsel" should fail on their motion for summary judgment. Plaintiff also submitted a document entitled affidavit from William Finkley. (Doc. # 89). Finkley states that he can attest to the conditions of confinement at the JRLDC Maximum Security Units. Finkley states they have no indoor or outdoor recreational exercise, no sun light, no fresh air, the windows are covered with steel, sewage water's flooding the

---

[3] It should be recognized that Dr. Ellison, Medical Director at Waccamaw Center for Mental Health, noted the following in his statement to defense counsel, quoted verbatim:

> I have reviewed the information that you have provided and this gentleman's Mental Health Center records. Based on this review, I can not determine if his mental health treatment and hospitalization was the result of the totality of the conditions of his confinement. Therefore, I am unable to render an opinion about this.

> I am sorry that we can not be of any help to the court in this matter. . .

(Defendants' Exhibit D, Doc. #94).

Therefore, since Dr. Ellison could not determine that the mental health treatment and hospitalization were the result of the totality of the conditions of his confinement, the report is insufficient to defeat summary judgment. Plaintiff or the witnesses he presents are not medical doctors or appropriate experts and, thus, are not competent to testify to a causal connection.

cells, sleeping on the floors in the cells, overcrowding, no reading materials, no laundry service, no hot meals, no cleaning cells or cleaning materials, no haircuts, not allowed to shave, no clean uniforms, full body restraints or handcuffs, belly chains, and leg irons, infested with insects, etc. Further, Finkley states that these conditions of confinement were imposed upon the plaintiff with the intent to punish and harm unnecessarily without need or provocation which led to injury upon the plaintiff several times. (Doc. # 89).

Plaintiff also submitted three documents entitled affidavits of Richard Ward, Jason Alan Hertzog, and Larry Gene Martin who all report the conditions of confinement at the JRLDC Maximum Security Unit and all state basically the same thing as Finkle which is set out above. (Docs. #76, 77, 78).

A review of the evidence submitted reveals that plaintiff has not established a causal connection between the conditions of confinement at JRLDC and his treatment at the mental health center. Plaintiff has not presented any expert testimony connecting his mental health treatment to the conditions of confinement at the JRLDC. In <u>Andrews v. Elkings</u>, 227 F.Supp.2d 488 (M.D. N.C. 2002), the District Court held that "plaintiff has not produced any evidence providing a causal link between his handcuffs being too tight and his allegedly aggravated hypertension. Therefore there is no issue of material fact." <u>Id</u>. at 492. In <u>Hertzog v. Horry County</u>, 2006 WL 1819479 (D.S.C. 2006), the District Court held that "[i]n order for a plaintiff to have a claim for unconstitutional conditions of confinement, there must be evidence of a serious medical and emotional deterioration attributable to the challenged condition." <u>Id</u>. <i>Citing</i> <u>Shrader v. White</u>, 761 F.2d 975, 979 (4th Cir. 1985).  As plaintiff has failed to meet this burden by failing to show a causal connection that the conditions of confinement at the JRLDC were attributable to an emotional injury or deterioration, there is no

12

evidence that a constitutional injury occurred. Accordingly, it is recommended that defendants'
motion for summary judgment be granted with respect to plaintiff's conditions of confinement
claim.[4]

In their supplemental memorandum, defendants argue that they are entitled to qualified
immunity because, "[a]t best, plaintiff alleges defendants ignored his medical condition and
subjected him to unbelievable conditions of confinement. Yet, the record does not support plaintiff's
assertions.(See affidavit of Safford previously filed as document #74).[5] Defendants crossed no such
bright line concerning plaintiff's rights." (Doc. #94).

Qualified immunity protects government officials performing discretionary functions from
civil damage suits as long as the conduct in question does not "violate clearly established rights of
which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).
This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff
that was clearly established at the time of the alleged violation so that an objectively reasonable
official in the defendants' position would have known of it. *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court
must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right
at all and, if so, proceed to determine whether that right was clearly established at the time of the

---

[4] The previous report and recommendation is incorporated as to conditions of
confinement and any other outstanding issues not addressed in this supplemental report and
recommendation.

[5] Defendants also submitted the affidavit of Susan Safford who attests that plaintiff's
correctly submitted grievances were addressed, that inmates were given an opportunity to clean
their cells, that any standing water in the cells would be a result of the inmate's flooding their
own cells, and that the population of the institution does require inmates sleep on mattresses on
the floor but that inmates do not sleep the floor. (Doc. #74).

alleged violation." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999); *see also* <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685 (4th Cir.2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." <u>Wilson</u>, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." <u>Porterfield v. Lott</u>, 156 F.3d 563, 567(4th Cir.1998); <u>Jackson v. Long</u>, 102 F.3d 722, 728 (4th Cir. 1996); <u>DiMeglio v. Haines</u>, 45 F.3d 790, 797 (4th Cir. 1995); <u>Hertzog v. Horry County</u>, 2006 WL 1819479 (D.S.C. 2006).

In this case, as set forth above, the plaintiff has failed to demonstrate that he has suffered damage as contemplated by §1983. Thus, plaintiff has failed to show a violation of constitutional rights. Therefore, it is not necessary for this court to reach the issue of qualified immunity.

### III. PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

On February 8, 2006, plaintiff filed a motion for temporary restraining order. In this motion, plaintiff requests that the court issue this order restraining all of the parties "because of reprisal" until his civil action can be resolved by the court. As the undersigned is issuing a Report and Recommendation to the District Judge recommending that this action be dismissed, it is recommended that this motion (doc. #65) be deemed MOOT.

### IV. PLAINTIFF'S MOTION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

On April 12, 2006, plaintiff filed a motion entitled "Motion and Affidavit For A. . . Petition

14

For Writ of Mandamus Leave to Proceed In Forma Pauperis." (Doc. #71). In this motion, plaintiff requests that he be granted IFP for "this petition for Writ of Mandamus." Plaintiff has a signature line for the "U.S. Court of Appeals Judge/ Clerk of Court (Fourth Circuit)" but filed both the motion for IFP and the petition for writ of mandamus in this court not the Fourth Circuit Court of Appeals. From plaintiff's filings , it appears that he intended to file the petition for writ of mandamus and the petition for IFP to file the writ of mandamus with the Fourth Circuit Court of Appeals. Thus, as the motion for IFP is not properly before this court, it is recommended that plaintiff's motion for IFP (doc. #71) be dismissed and plaintiff should be directed to file it with the Fourth Circuit Court of Appeals if that was his intention.

## V. CONCLUSION

Based on the reasons as set forth above, it is    RECOMMENDED that the motion filed by the defendants for summary judgment (doc. # 35) be GRANTED as to the allegation of conditions of confinement.

FURTHER, IT IS RECOMMENDED based on the above reasons that plaintiff's motion for summary judgment (doc. #48) be denied; plaintiff's motion for temporary restraining order (Doc. # 65) be deemed moot; and, plaintiff's motion to proceed In Forma Pauperis in the Fourth Circuit be dismissed.

Respectfully submitted,

Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

August 25, 2006
Florence, South Carolina

**The parties' attention is directed to the important information on the attached notice.**

15

## Notice of Right to File Objections to Magistrate Judge's "Report and Recommendation"
&
## The Serious Consequences of a Failure to Do So

The parties are hereby notified that any objections to the attached Report and Recommendation (or Order and Recommendation) must be filed within ten (10) days of the date of service. 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b). The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three days for filing by mail. Fed. R. Civ. P. 6. A magistrate judge makes only a recommendation, and the authority to make a final determination in this case rests with the United States District Judge. *See* Mathews v. Weber, 423 U.S. 261, 270-271 (1976); and Estrada v. Witkowski, 816 F. Supp. 408, 410, 1993 U.S.Dist. LEXIS® 3411 (D.S.C. 1993).

During the ten-day period for filing objections, but not thereafter, a party must file with the Clerk of Court specific, written objections to the Report and Recommendation, if he or she wishes the United States District Judge to consider any objections. Any written objections must *specifically identify* the portions of the Report and Recommendation to which objections are made *and* the basis for such objections. *See* Keeler v. Pea, 782 F. Supp. 42, 43-44, 1992 U.S.Dist. LEXIS® 8250 (D.S.C. 1992); and Oliverson v. West Valley City, 875 F. Supp. 1465, 1467, 1995 U.S.Dist. LEXIS® 776 (D.Utah 1995). Failure to file written objections shall constitute a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the United States District Judge. *See* United States v. Schronce, 727 F.2d 91, 94 & n. 4 (4th Cir.), *cert. denied*, Schronce v. United States, 467 U.S. 1208 (1984); and Wright v. Collins, 766 F.2d 841, 845-847 & nn. 1-3 (4th Cir. 1985). Moreover, if a party files specific objections to a portion of a magistrate judge's Report and Recommendation, but does not file specific objections to other portions of the Report and Recommendation, that party waives appellate review of the portions of the magistrate judge's Report and Recommendation to which he or she did not object. In other words, a party's failure to object to one issue in a magistrate judge's Report and Recommendation precludes that party from subsequently raising that issue on appeal, even if objections are filed on other issues. Howard v. Secretary of HHS, 932 F.2d 505, 508-509, 1991 U.S.App. LEXIS® 8487 (6th Cir. 1991). *See also* Praylow v. Martin, 761 F.2d 179, 180 n. 1 (4th Cir.)(party precluded from raising on appeal factual issue to which it did not object in the district court), *cert. denied*, 474 U.S. 1009 (1985). In Howard, supra, the Court stated that general, non-specific objections are *not* sufficient:

> A general objection to the entirety of the [magistrate judge's] report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the [magistrate judge] useless. * * * This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. * * * We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error.

*Accord* Lockert v. Faulkner, 843 F.2d 1015, 1017-1019 (7th Cir. 1988), where the Court held that the appellant, who proceeded *pro se* in the district court, was barred from raising issues on appeal that he did not specifically raise in his objections to the district court:

> Just as a complaint stating only 'I complain' states no claim, an objection stating only 'I object' preserves no issue for review. * * * A district judge should not have to guess what arguments an objecting party depends on when reviewing a [magistrate judge's] report.

*See also* Branch v. Martin, 886 F.2d 1043, 1046, 1989 U.S.App. LEXIS® 15,084 (8th Cir. 1989)("no de novo review if objections are untimely or general"), which involved a *pro se* litigant; and Goney v. Clark, 749 F.2d 5, 7 n. 1 (3rd Cir. 1984)("plaintiff's objections lacked the specificity to trigger *de novo* review"). This notice, hereby, apprises the plaintiff of the consequences of a failure to file specific, written objections. *See* Wright v. Collins, supra; and Small v. Secretary of HHS, 892 F.2d 15, 16, 1989 U.S.App. LEXIS® 19,302 (2nd Cir. 1989). Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections addressed as follows:

Larry W. Propes, Clerk
United States District Court
Post Office Box 2317
Florence, South Carolina  29503

16